**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PABLO PINA,                                             No. C 04-2251 SI (pr)

        Petitioner,                          **ORDER OF DISMISSAL**

    v.

JOE McGRATH,

        Respondent.
                              /

### INTRODUCTION

Pablo Pina, a prisoner at Pelican Bay State Prison, filed a <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is now before the court for consideration of respondent's motion to dismiss the petition as untimely. The court finds that the petition -- filed two decades after the crimes and 16 years after the conviction became final -- was not filed by the deadline in 28 U.S.C. § 2244(d). The motion to dismiss will be granted and the petition dismissed.

### BACKGROUND

Following a jury trial in Santa Clara County Superior Court in 1986, Pablo Pina was convicted of murder and first degree burglary with the use of a firearm. He was sentenced in April 1986 to a term of 38 years to life in prison. Pina appealed. The California Court of Appeal affirmed the judgment of conviction in 1988. Pina did not petition for review in the California Supreme Court.

Pina filed several motions and habeas petitions in state courts relating to his conviction. One of the main themes of Pina's opposition to the pending motion to dismiss is that any delay in getting to federal court was due to the fact that he has been trying for years to obtain copies of tapes of interviews with witnesses and police reports in his case so he could prepare a proper habeas petition. This requires an exploration of the particular motions and petitions he filed in state court.

On February 21, 1991, Pina filed a "motion for transcripts" in his criminal case in the Santa Clara County Superior Court. The motion did <u>not</u> ask for a copy the tapes or police reports or evidence but instead asked for a copy of the "reporter's transcripts, clerk's transcripts and judgment roll" from his criminal case. <u>See</u> Resp. Exh. 2, p. 2. The motion was denied on March 8, 1991 because Pina had not made a particularized showing of a need for the transcripts.

On October 11, 1994, Pina filed in the Santa Clara County Superior Court a document that consisted of a habeas petition cover sheet and a 2-page "motion for records and transcripts for habeas corpus proceedings." <u>See</u> Resp. Exh. 4; Opposition, Exh. B, pp. 36-38. The petition was denied as untimely on December 27, 1994. Like the 1991 motion, the 1994 filing asked for a copy of the "report's [sic] transcripts, clerks transcripts and judgment roll" and did <u>not</u> request a copy of evidence including tapes of interviews and police reports. <u>Id.</u> at 37.

On March 2, 1995, Pina filed a habeas petition in the California Supreme Court. The petition was denied on the merits and for lack of diligence on March 30, 1995. Resp. Exh. 6.

The first hint that Pina was trying to obtain police reports and perhaps other evidence is found in a March 25, 1999 letter Pina allegedly wrote to the public defender's office. <u>See</u> Opposition, p. 42. That letter did mention that Pina had tried to obtain the evidence in 1990-1991 from the public defender's office, although it doesn't explain what he had been doing in the eight intervening years between the earlier request and the current letter.

In May 1999, Pina filed a habeas petition in the Santa Clara County Superior Court. The petition was denied on May 25, 1999, because "[t]he alleged 'new evidence' is not new nor is there a substantial reason why the evidence was not brought forth sooner. The alleged 'new evidence' that petitioner refers to are interrogation and witness tapes that petitioner alleges were made near

1    the time of the original criminal investigation.   Even the petitioner acknowledges that both the

2    petitioner's attorney and the prosecution were well aware of the tapes at that time."  Resp. Exh. 7,

3    pp. 1-2.

4       On November 6, 2000, Pina filed a habeas petition in the California Court of Appeal.   The

5    petition was denied on January 22, 2001.  Resp. Exh. 8.

6       On February 2, 2001, Pina filed a petition for writ of habeas corpus in the California

7    Supreme Court.  The petition was denied on June 27, 2001.  Resp. Exh. 9.

8       In 2003, Pina filed another habeas petition in Santa Clara County Superior Court.   The

9    petition was denied on October 10, 2003 because it was an attempt to file claims in a piecemeal

10    fashion without adequate justification.   Resp. Exh. 10.   The court explained that Pina's reliance on

11    the recent passage of California Penal Code § 1054.9 regarding post-conviction discovery did not

12    aid him because that provision only applied to prisoners sentenced to death or life without parole,

13    which Pina was not.  Id. at p. 2.

14       On July 7, 2003, Pina filed a another habeas petition in the California Supreme Court.   The

15    petition was denied on March 30, 2004.

16       Pina's federal habeas petition was stamped "Filed" on June 8, 2004.   The proof of service

17    for the petition states that it was mailed on June 1, 2004, and bears a June 2, 2004 postmark on

18    the envelope in which it arrived at the court.   For statute of limitations purposes, the petition is

19    deemed filed on June 1, 2004, the date on which the unrepresented prisoner put the petition in the

20    prison mail.  See Houston v. Lack, 487 U.S. 266, 276 (1988); Saffold v. Newland, 250 F.3d 1262,

21    1268 (9th Cir. 2001) (pro se prisoner's federal habeas petition is deemed filed when prisoner

22    delivers petition to prison authorities for mailing), vacated and remanded on other grounds, Carey

23    v. Saffold, 536 U.S. 214, 122 S. Ct. 2134 (2002).  Pina's earlier federal petition, Pina v. Terhune,

24    No. C99-3525 SI, was filed in 1999 and dismissed within a month of filing because it was not

25    exhausted.

26       Pina's current federal petition for writ of habeas corpus contains three claims:   (1) the

27    prosecutor knowingly used fabricated testimony, i.e., testimony shown to be false by the taped

28    statements and police reports, (2) ineffective assistance of counsel in that counsel failed to

challenge Pina's arrest and failed to present tape recordings of prior witness statements to impeach the witnesses, and (3) the failure of the courts and his attorney to provide him with the evidence to support his claim violated his right to due process.

## DISCUSSION

Respondent moves to dismiss the petition as untimely. Pina opposes the motion, urging that the AEDPA does not apply to his case because he was convicted a decade before the AEDPA became law. Pina further urges that, if the AEDPA does apply, his petition is not untimely because he has been trying for about 15 years to obtain the evidence to support his claims. Pina does not connect his alleged hunt for evidence to a particular legal theory to show how it matters in the statute of limitations analysis. It appears that the alleged hunt for evidence could be the springboard for four legal arguments: (1) a delayed start of the one-year limitations period due to the existence of an impediment to filing the petition caused by unconstitutional/unlawful state action, (2) a delayed start of the one-year limitations period until Pina discovered the factual predicate of the claims, (3) statutory tolling for the time during which Pina's state court petitions were pending, and (4) equitable tolling of the limitations period due to an extraordinary circumstance beyond Pina's control. Each of the arguments will be considered, but all ultimately fail.

A.    <u>The AEDPA Applies To Pina's Petition</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became law on April 24, 1996, and imposed for the first time a statute of limitations on petitions for writ of habeas corpus filed by state prisoners, 28 U.S.C. § 2244(d). The AEDPA applies to petitions filed after its effective date. <u>See</u> <u>Woodford v. Garceau</u>, 538 U.S. 202, 207 (2003). The fact that Pina was convicted ten years before the AEDPA became law does not matter for purposes of determining that the AEDPA applies, because the determinative fact is the date of the filing of the federal petition. The AEDPA applies because Pina's federal petition was filed in 2004, six years after the AEDPA became law.

**United States District Court**
For the Northern District of California

B.      Timeliness of Petition

Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on which:  (1) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1).

1.      The Limitations Period Began For Pina On April 24, 1996

Normally, the limitations period will begin for a petitioner on the date on which his judgment became final by conclusion of direct review.  However, the AEDPA's one-year time limit did not begin to run against any state prisoner before the date of the Act's enactment.  Calderon v. United States District Court (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997) (allowing § 2244(d)'s limitation period to commence before AEDPA's enactment would have an impermissible retroactive effect), cert. denied, 522 U.S. 1099, and cert. denied, 523 U.S. 1061 (1998), overruled in part on other grounds by Calderon v. United States District Court (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc), cert. denied, 526 U.S. 1060 (1999).  A prisoner with a state conviction finalized before April 24, 1996 therefore had until April 24, 1997 to file a federal habeas petition on time.  Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001), cert. denied, 534 U.S. 978 (2001).  Pina is entitled to the grace period following the enactment of the AEDPA and would have a presumptive deadline of April 24, 1997 to file his federal petition under normal conditions because his conviction became final in 1988.

Pina's assertion that he has been hunting for evidence for 15 years requires the court to consider whether an alternative starting date for the limitations period should be used.  Under § 2244(d)(1)(D), the one-year limitation period starts on the date on which "the factual predicate of the claim or claims presented could have been discovered through the exercise of due

United States District Court

For the Northern District of California

diligence."   The time begins "'when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance.'"   Hasan v. Galaza, 254 F.3d 1150, 1154-55 n.3 (9th Cir. 2000) (quoting Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000)) (remanding case to district court for further factual findings concerning determination of when, with exercise of due diligence, petitioner could have discovered facts to support prejudice prong of IAC claim).   Pina has known the important facts since the time of his trial. [1]   Pina has repeatedly argued that he told his trial attorney to use the tapes to show that witnesses lied but his attorney refused to do so at the trial.   See, e.g., Opposition, p. 4 ("Petitioner knows that his trial counsel intentionally deprived him of his right to a fair trial by telling Petitioner that they could not use the tape recorded evidence in trial, even though they showed that the witnesses were lying now and completely changed statements at the preliminary hearing"); id. at 11 (defense counsel and district attorney refused to call as a witness a man who made helpful statements on one of the tapes); id. at 20-21 (Pina asked counsel to present at trial the statements made to the police after the shooting and the taped statements).   Pina not only knew of the existence of the tapes, he knew the contents of them as well as the police reports.   See Opposition, pp. 10-11 (describing contents of tapes and police reports); id. at 11 ("This is only some of what was on the tape and what counsel told petitioner"); Petition, p. 5 ("I listened to the tapes and asked my attorney why he don't use them in trial to show the witnesses are lying.  He said the judge wouldn't allow it.")

Pina thus knew in 1986 that (1) the tapes and reports had information that he believed helpful to his defense, (2) he asked defense counsel to use them and defense counsel refused to use them for impeachment, (3) the prosecution presented evidence that allegedly was contradicted by those tapes, and (4) neither defense counsel nor the prosecutor had called John Ballisteri (who allegedly had helpful information)  to testify.   To allow Pina to wait for almost two decades to file his federal petition even though he knew of these facts in before he was even convicted in 1986 would  improperly confuse  Pina's knowledge of the factual predicate of his claims with the time

---

[1]A California court refused to treat the evidence as new evidence in 1999.  See Resp. Exh. 7, pp. 1-2 (rejecting argument that there was new evidence and explaining that the evidence was known to defense counsel and prosecutor at time of trial).

permitted for gathering evidence in support of the claims: "Section 2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim[s]." Flanagan v. Johnson, 154 F.3d 196, 198-99 (5th Cir. 1998); see, e.g., United States v. Battles, 362 F.3d 1195, 1198 (9th Cir. 2004) (§ 2255 petition) (even though petitioner did not have access to trial transcripts, the facts supporting claims which occurred at the time of his conviction could have been discovered if he "at least consult[ed] his own memory of the trial proceedings;" because he did not do so, he did not exercise due diligence and was not entitled to a delayed start of the limitations period under § 2255(4)). In fact, if Pina's failure to obtain the tapes and police reports were sufficient for § 2244(d)(1)(D) delayed start, the limitations period would not have started as of today -- 19 years after the conviction -- because he still does not have that evidence. Pina's alleged hunt for evidence does not require the use of the § 2244(d)(1)(D) starting date because he knew of the factual predicate for his claims in 1986.

The other possible delayed starting date for the limitations period is "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action," 28 U.S.C. § 2244(d)(1)(B). The few cases applying § 2244(d)(1)(B) have "dealt almost entirely with the conduct of state prison officials who interfere with inmates' ability to prepare and to file habeas petitions," and "comport with the plain meaning of the provision, which applies when a petitioner has been impeded from filing a habeas petition." Shannon v. Newland, 410 F.3d 1083, 1087 (9th Cir. 2005) (rejecting claim that unfavorable state appellate opinion was an "impediment" to petitioner's filing a habeas petition); see Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc). The alleged lack of evidence that might support the petition was not an impediment created by unconstitutional or unlawful state action to Pina filing his habeas petition – he could and did file habeas petitions without the evidence. Moreover, the evidence in question is physical evidence (e.g., tapes and police reports), the contents of which Pina has known and been able to describe since 1986. The delayed starting date under 28 U.S.C. § 2244(d)(1)(B) does not apply because Pina was not prevented from filing an application created by State action

1  in violation of the laws or Constitution of the United States.

2

3        2.      No Statutory Tolling Is Available For Pina

4        Having determined that the one-year limitations period began on April 24, 1996, that the

5  presumptive deadline for filing the federal petition was April 24, 1997, and that Pina missed the

6  deadline by years, the next step is to determine whether the limitations period should be statutorily

7  tolled.   The one-year limitations period can be tolled under § 2244(d)(2) for the "time during

8  which a properly filed application for State post-conviction or other collateral review with respect

9  to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  Pina is not entitled to any

10  statutory tolling because the state habeas petitions that could toll the limitations period were not

11  filed until 1999.   Pina's state court filings in 1991, 1994 and 1995 do not toll the limitations

12  period.

13        An application for collateral review is "pending" in state court "as long as the ordinary state

14  collateral review process is 'in continuance' – i.e., 'until the completion of' that process."   In other

15  words, until the application has achieved final resolution through the State's post-conviction

16  procedures, by definition it remains "pending."   Carey v. Saffold, 536 U.S. 214, 219-20 (2002).

17  In California, this means that the statute of limitations is tolled from the time the first state habeas

18  petition is filed until the California Supreme Court rejects the petitioner's final collateral

19  challenge, as long as the petitioner did not "unreasonably delay" in seeking review.   Id. at 221-23;

20  see Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999) (an application for collateral review is

21  "pending" in state court for "all of the time during which a state prisoner is attempting, through

22  proper use of state court procedures, to exhaust state court remedies with regard to a particular

23  post-conviction application.") (citation omitted), cert. denied, 529 U.S. 1104 (2000).   "When a

24  postconviction petition is untimely under state law, 'that [is] the end of the matter' for the purposes

25  of § 2244(d)(2)." Pace v. DiGuglielmo, 125 S. Ct. 1807, 1812 (2005) (quoting Carey v. Saffold,

26  536 U.S. 214, 226 (2002)).   In Pace, the Supreme Court held that "time limits, no matter their

27  form, are 'filing' conditions.   Because the state court rejected petitioner's [postconviction]

28  petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under

United States District Court
For the Northern District of California

8

§2244(d)(2)." Pace, 125 S. Ct. at 1814.

Pina's pre-1999 filings did not start the statutory tolling period.  His 1991 filing was a motion for transcripts in his state criminal case.  It did not challenge  the conviction or sentence but only sought to obtain documents – documents that were not the evidence he now claims he needed.  Pina's 1994 habeas petition filed in the Santa Clara County Superior Court was denied as untimely; it therefore was not "properly filed" for purposes of § 2244(d)(2) and is not entitled to statutory tolling.  See Pace, 125 S. Ct. at 1812.  Pina's 1995 habeas petition in the California Supreme Court was denied on the merits and for lack of diligence; it therefore was  not  properly filed under the reasoning of Pace and is not entitled to statutory tolling.  See id. at 1812, 1814 (holding that "time limits, no matter their form, are 'filing' conditions").    Under California's system, a petitioner sometimes is entitled to statutory tolling even during the gaps between his various state court collateral challenges; however, only a "properly filed" state collateral challenge can start the statutory tolling period that might last over the course of several rounds of state habeas filings.    Because the pre-AEDPA filings by Pina were not "properly filed" within the meaning of § 2244(d)(2), they did not start the statutory tolling period.    The earliest petition Pina filed that could have started the statutory tolling period – assuming arguendo that a petition filed after an earlier petition was denied as untimely could be considered properly filed – was not filed until 1999, but that was more than a year after the limitations period had ended on April 24, 1997.[2] The 1999 filing by Pina could not restart the limitations period that expired on April 24, 1997. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed," even if the state petition was timely filed), cert. denied, 540 U.S. 924 (2003).  In sum, the potential tolling event of the pendency of arguably properly filed state petitions did not start until 1999 -- a couple

_____

[2]The recently revised opinion in Gaston v. Palmer, No. 01-56367, slip op. 8969 (9th Cir. Aug. 2, 2005), is factually distinguishable and does not alter the analysis.  In Gaston, the petitioner had filed six state collateral challenges.  The second through fifth of the challenges were denied without comment and the first and sixth challenges were dismissed for curable defects; therefore, all were "properly filed" under § 2244(d)(2).  See Gaston, slip op. at 8984-86.  Unlike Gaston's petitions, Pina's pre-1997 petitions were denied for the non-curable defect of being untimely and therefore were not properly filed.

United States District Court
For the Northern District of California

1  of years after the one-year period ended on April 24, 1997.  Unless Pina is able to bridge the gap

2  between 1997 and 1999 by showing entitlement to equitable tolling for the period before the 1999

3  state habeas petition was filed, the state habeas petitions filed in and after 1999 were too late to

4  matter.

5

6        3.        No Equitable Tolling Is Available For Pina

7        Equitable tolling of the limitation period is available upon a showing of extraordinary

8  circumstances beyond a petitioner's control which prevented him from timely filing the petition.

9  See, e.g., Calderon v. United States District Court (Beeler), 128 F.3d at 1288.  "When external

10 forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim,

11 equitable tolling of the statute of limitations may be appropriate."  Miles v. Prunty, 187 F.3d 1104,

12 1107 (9th Cir. 1999).  Equitable tolling will not be available in most cases because extensions of

13 time should be granted only if "extraordinary circumstances beyond a prisoner's control make it

14 impossible to file a petition on time." Beeler, 128 F.3d at 1288 (citation and internal quotation

15 marks omitted).  The prisoner must show that "the 'extraordinary circumstances' were the cause

16 of his untimeliness." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (citations omitted).

17       There are several reasons equitable tolling is not warranted here.  First, the record before

18 this court does not show a 15-year quest for evidence.  Although Pina asserts he has been trying

19 for 15 years to obtain evidence to prepare a better petition, the evidence does not support his

20 assertion.   Pina's 1991 and 1994 filings in state court sought production of the reporter's

21 transcripts, clerk's transcripts and judgment roll from his criminal case and did not request a copy

22 of the tapes or police reports.  In the record before this court, the first hint that Pina was trying

23 to obtain police reports and perhaps other evidence is found in a March 25, 1999 letter Pina

24 allegedly wrote to the public defender's office.  See Opposition, p. 42.  But even that document

25 suggests a lack of diligence because it mentions that Pina had tried to obtain the evidence in 1991,

26 eight years earlier, and had not received any answer.

27       Second, even assuming arguendo that Pina has been trying to get the evidence for the last

28 15 years, the record does not disclose diligence on his part.  There are long gaps between his

United States District Court

For the Northern District of California

efforts that are far more suggestive of a lack of diligence.   The record indicates that Pina occasionally would take a run at obtaining relief and then abandon his efforts for a few years and then take another run at it.[3]   After Pina's  motion was denied in 1991, he waited until 1994 to do his next court filing; after his 1995 petition was denied by the California Supreme Court, he waited until 1999 to do his next court filing; and after a series of petitions in 1999-2001 that ended with failure on the denial of the petition by the California Supreme Court on June 27, 2001, he waited a couple of more years until 2003 to begin another series of court filings.   "Under long-established principles, petitioner's lack of diligence precludes equity's operation." Pace, 125 S. Ct. at 1815; Miles v. Prunty, 187 F.3d at 1107 (external forces, rather than lack of diligence, must account for the untimely filing).

Third, even assuming arguendo that Pina has been trying to obtain the evidence for 15 years, he has known of the existence and contents of that evidence since 1986 during his trial.  The lack of the physical evidence itself simply cannot be realistically viewed as an "extraordinary circumstance."   To the contrary, it is a rare case where the inmate does have possession of the physical evidence that he alleges proves the merit of his claim.   For example, if a petitioner wanted to claim that an alleged murder weapon was incapable of firing, the failure to deliver to him that gun would not give him an open-ended excuse on the limitations period.   Pina's failure to obtain the physical evidence was not an extraordinary circumstance.

Fourth, assuming arguendo that Pina's inability to obtain the evidence was an extraordinary circumstance, it did not make it impossible for Pina to file his petition on time.   Pina has filed numerous petitions in state court and two in federal court, all without having possession of the evidence he claims is necessary to prove the truth of his claims.   As noted earlier, Pina still does not have the evidence, but he has been able to file habeas petitions here and in state court.

---

[3]The gaps between Pina's efforts to attack his criminal conviction are even less excusable because Pina was actively litigating on other fronts in 1994-2000.   He filed several civil rights actions in this court (Case Nos. C94-2124 SI, C94-2464 SI, C94-4161 SI, C95-2123 SI, C99-397 SI, and C99-1097 SI), and several of those cases continued for several years.  In Pina v. Gomez, Case No. C94-2464 SI, he was pursuing claims for himself and other inmates and complained about prison officials' interference with  his activity as a writ writer aiding other inmates.  Pina's choice to spend his time doing legal work for other inmates rather than attacking his own conviction does not show diligence with regard to the latter.

**United States District Court**
For the Northern District of California

1    Finally, the equitable tolling principle allows for tolling when an event or circumstance

2    makes the filing of a timely petition; it does not allow for tolling while a prisoner goes in search

3    of evidence to improve the quality of the petition that he can and does file.  Pina does not persuade

4    with his argument that the evidence was necessary for him to prepare a "better" petition.  If all a

5    prisoner had to do to obtain tolling was to say he was in search of physical evidence to make his

6    petition better or more persuasive -- notwithstanding his knowledge of the existence and contents

7    of that evidence --  the statute of limitations would be eviscerated as almost any petitioner could

8    make that argument to avoid the time limitation that Congress imposed.

9    Pina is not entitled to any equitable tolling of the limitations period.   His federal habeas

10   petition, filed on June 1, 2004, was untimely and therefore must be dismissed under 28 U.S.C. §

11   2244(d).

12

13                                          **CONCLUSION**

14   Respondent's motion to dismiss is GRANTED.   (Docket # 8.)   The petition for writ of

15   habeas corpus is DISMISSED because it was not timely filed.  The clerk shall close the file.

16   IT IS SO ORDERED.

17   DATED: August _8__, 2005                    _____

18                                                 SUSAN ILLSTON
                                                 United States District Judge

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6                         UNITED STATES DISTRICT COURT

7                       NORTHERN DISTRICT OF CALIFORNIA

8

9   PABLO PINA,                                 No. C 04-2251 SI (pr)

10          Petitioner,                          **ORDER OF DISMISSAL**

11      v.

12   JOE McGRATH,

13          Respondent.
                                          /
14   ————————————————————

15                              **INTRODUCTION**

16          Pablo Pina, a prisoner at Pelican Bay State Prison, filed a <u>pro se</u> petition for writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  This matter is now before the court for consideration of

18   respondent's motion to dismiss the petition as untimely.  The court finds that the petition -- filed

19   two decades after the crimes and 16 years after the conviction became final --  was not filed by

20   the deadline in 28 U.S.C. § 2244(d).  The motion to dismiss will be granted and the petition

21   dismissed.

22

23                              **BACKGROUND**

24          Following a jury trial in Santa Clara County Superior Court in 1986, Pablo Pina was

25   convicted of murder and first degree burglary with the use of a firearm.  He was sentenced in April

26   1986 to a term of 38 years to life in prison.  Pina appealed.  The California Court of Appeal

27   affirmed the judgment of conviction in 1988.  Pina did not petition for review in the California

28   Supreme Court.

**United States District Court**

For the Northern District of California

1   Pina filed several motions and habeas petitions in state courts relating to his conviction.

2   One of the main themes of Pina's opposition to the pending motion to dismiss is that any delay in

3   getting to federal court was due to the fact that he has been trying for years to obtain copies of

4   tapes of interviews with witnesses and police reports in his case so he could prepare a proper

5   habeas petition.   This requires an exploration of the particular motions and petitions he filed in

6   state court.

7   On February 21, 1991, Pina filed a "motion for transcripts" in his criminal case in the Santa

8   Clara County Superior Court.   The motion did <u>not</u> ask for a copy the tapes or police reports or

9   evidence but instead asked for a copy of the "reporter's transcripts, clerk's transcripts and judgment

10  roll" from his criminal case.   <u>See</u> Resp. Exh. 2, p. 2.   The motion was denied on March 8, 1991

11  because Pina had not made a particularized showing of a need for the transcripts.

12  On October 11, 1994, Pina filed in the Santa Clara County Superior Court a document that

13  consisted of a habeas petition cover sheet and a 2-page "motion for records and transcripts for

14  habeas corpus proceedings."   <u>See</u> Resp. Exh. 4; Opposition, Exh. B, pp. 36-38.   The petition was

15  denied as untimely on December 27, 1994.   Like the 1991 motion, the 1994 filing asked for a

16  copy of the "report's [sic] transcripts, clerks transcripts and judgment roll" and did not request a

17  copy of evidence including tapes of interviews and police reports.   <u>Id.</u> at 37.

18  On March 2, 1995, Pina filed a habeas petition in the California Supreme Court.   The

19  petition was denied on the merits and for lack of diligence on March 30, 1995.   Resp. Exh. 6.

20  The first hint that Pina was trying to obtain police reports and perhaps other evidence is

21  found in a March 25, 1999 letter Pina allegedly wrote to the public defender's office.   <u>See</u>

22  Opposition, p. 42.   That letter did mention that Pina had tried to obtain the evidence in 1990-1991

23  from the public defender's office, although it doesn't explain what he had been doing in the eight

24  intervening years between the earlier request and the current letter.

25  In May 1999, Pina filed a habeas petition in the Santa Clara County Superior Court.   The

26  petition was denied on May 25, 1999, because "[t]he alleged 'new evidence' is not new nor is there

27  a substantial reason why the evidence was not brought forth sooner.   The alleged 'new evidence'

28  that petitioner refers to are interrogation and witness tapes that petitioner alleges were made near

1   the time of the original criminal investigation.   Even the petitioner acknowledges that both the

2   petitioner's attorney and the prosecution were well aware of the tapes at that time."   Resp. Exh. 7,

3   pp. 1-2.

4           On November 6, 2000, Pina filed a habeas petition in the California Court of Appeal.   The

5   petition was denied on January 22, 2001.   Resp. Exh. 8.

6           On February 2, 2001, Pina filed a petition for writ of habeas corpus in the California

7   Supreme Court.   The petition was denied on June 27, 2001.   Resp. Exh. 9.

8           In 2003, Pina filed another habeas petition in Santa Clara County Superior Court.   The

9   petition was denied on October 10, 2003 because it was an attempt to file claims in a piecemeal

10  fashion without adequate justification.   Resp. Exh. 10.   The court explained that Pina's reliance on

11  the recent passage of California Penal Code § 1054.9 regarding post-conviction discovery did not

12  aid him because that provision only applied to prisoners sentenced to death or life without parole,

13  which Pina was not.   Id. at p. 2.

14          On July 7, 2003, Pina filed a another habeas petition in the California Supreme Court.   The

15  petition was denied on March 30, 2004.

16          Pina's federal habeas petition was stamped "Filed" on June 8, 2004.   The proof of service

17  for the petition states that it was mailed on June 1, 2004, and bears a June 2, 2004 postmark on

18  the envelope in which it arrived at the court.   For statute of limitations purposes, the petition is

19  deemed filed on June 1, 2004, the date on which the unrepresented prisoner put the petition in the

20  prison mail.   See Houston v. Lack, 487 U.S. 266, 276 (1988); Saffold v. Newland, 250 F.3d 1262,

21  1268 (9th Cir. 2001) (pro se prisoner's federal habeas petition is deemed filed when prisoner

22  delivers petition to prison authorities for mailing), vacated and remanded on other grounds, Carey

23  v. Saffold, 536 U.S. 214, 122 S. Ct. 2134 (2002).   Pina's earlier federal petition, Pina v. Terhune,

24  No. C99-3525 SI, was filed in 1999 and dismissed within a month of filing because it was not

25  exhausted.

26          Pina's current federal petition for writ of habeas corpus contains three claims:   (1) the

27  prosecutor knowingly used fabricated testimony, i.e., testimony shown to be false by the taped

28  statements and police reports, (2) ineffective assistance of counsel in that counsel failed to

challenge Pina's arrest and failed to present tape recordings of prior witness statements to impeach the witnesses, and (3) the failure of the courts and his attorney to provide him with the evidence to support his claim violated his right to due process.

## DISCUSSION

Respondent moves to dismiss the petition as untimely. Pina opposes the motion, urging that the AEDPA does not apply to his case because he was convicted a decade before the AEDPA became law. Pina further urges that, if the AEDPA does apply, his petition is not untimely because he has been trying for about 15 years to obtain the evidence to support his claims. Pina does not connect his alleged hunt for evidence to a particular legal theory to show how it matters in the statute of limitations analysis. It appears that the alleged hunt for evidence could be the springboard for four legal arguments: (1) a delayed start of the one-year limitations period due to the existence of an impediment to filing the petition caused by unconstitutional/unlawful state action, (2) a delayed start of the one-year limitations period until Pina discovered the factual predicate of the claims, (3) statutory tolling for the time during which Pina's state court petitions were pending, and (4) equitable tolling of the limitations period due to an extraordinary circumstance beyond Pina's control. Each of the arguments will be considered, but all ultimately fail.

A.    The AEDPA Applies To Pina's Petition

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became law on April 24, 1996, and imposed for the first time a statute of limitations on petitions for writ of habeas corpus filed by state prisoners, 28 U.S.C. § 2244(d). The AEDPA applies to petitions filed after its effective date. See Woodford v. Garceau, 538 U.S. 202, 207 (2003). The fact that Pina was convicted ten years before the AEDPA became law does not matter for purposes of determining that the AEDPA applies, because the determinative fact is the date of the filing of the federal petition. The AEDPA applies because Pina's federal petition was filed in 2004, six years after the AEDPA became law.

United States District Court

For the Northern District of California

B.     Timeliness of Petition

Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on which:  (1) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1).

1.     The Limitations Period Began For Pina On April 24, 1996

Normally, the limitations period will begin for a petitioner on the date on which his judgment became final by conclusion of direct review.  However, the AEDPA's one-year time limit did not begin to run against any state prisoner before the date of the Act's enactment.  Calderon v. United States District Court (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997) (allowing § 2244(d)'s limitation period to commence before AEDPA's enactment would have an impermissible retroactive effect), cert. denied, 522 U.S. 1099, and cert. denied, 523 U.S. 1061 (1998), overruled in part on other grounds by Calderon v. United States District Court (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc), cert. denied, 526 U.S. 1060 (1999).  A prisoner with a state conviction finalized before April 24, 1996 therefore had until April 24, 1997 to file a federal habeas petition on time.  Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001), cert. denied, 534 U.S. 978 (2001).  Pina is entitled to the grace period following the enactment of the AEDPA and would have a presumptive deadline of April 24, 1997 to file his federal petition under normal conditions because his conviction became final in 1988.

Pina's assertion that he has been hunting for evidence for 15 years requires the court to consider whether an alternative starting date for the limitations period should be used.  Under § 2244(d)(1)(D), the one-year limitation period starts on the date on which "the factual predicate of the claim or claims presented could have been discovered through the exercise of due

United States District Court

For the Northern District of California

diligence." The time begins "'when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance.'" Hasan v. Galaza, 254 F.3d 1150, 1154-55 n.3 (9th Cir. 2000) (quoting Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000)) (remanding case to district court for further factual findings concerning determination of when, with exercise of due diligence, petitioner could have discovered facts to support prejudice prong of IAC claim). Pina has known the important facts since the time of his trial. [1] Pina has repeatedly argued that he told his trial attorney to use the tapes to show that witnesses lied but his attorney refused to do so at the trial. See, e.g., Opposition, p. 4 ("Petitioner knows that his trial counsel intentionally deprived him of his right to a fair trial by telling Petitioner that they could not use the tape recorded evidence in trial, even though they showed that the witnesses were lying now and completely changed statements at the preliminary hearing"); id. at 11 (defense counsel and district attorney refused to call as a witness a man who made helpful statements on one of the tapes); id. at 20-21 (Pina asked counsel to present at trial the statements made to the police after the shooting and the taped statements). Pina not only knew of the existence of the tapes, he knew the contents of them as well as the police reports. See Opposition, pp. 10-11 (describing contents of tapes and police reports); id. at 11 ("This is only some of what was on the tape and what counsel told petitioner"); Petition, p. 5 ("I listened to the tapes and asked my attorney why he don't use them in trial to show the witnesses are lying. He said the judge wouldn't allow it.")

Pina thus knew in 1986 that (1) the tapes and reports had information that he believed helpful to his defense, (2) he asked defense counsel to use them and defense counsel refused to use them for impeachment, (3) the prosecution presented evidence that allegedly was contradicted by those tapes, and (4) neither defense counsel nor the prosecutor had called John Ballisteri (who allegedly had helpful information) to testify. To allow Pina to wait for almost two decades to file his federal petition even though he knew of these facts in before he was even convicted in 1986 would improperly confuse Pina's knowledge of the factual predicate of his claims with the time

---

[1] A California court refused to treat the evidence as new evidence in 1999. See Resp. Exh. 7, pp. 1-2 (rejecting argument that there was new evidence and explaining that the evidence was known to defense counsel and prosecutor at time of trial).

**United States District Court**
For the Northern District of California

1   permitted for gathering evidence in support of the claims:   "Section 2244(d)(1)(D) does not

2   convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible

3   scrap of evidence that might . . . support his claim[s]." Flanagan v. Johnson, 154 F.3d 196, 198-99

4   (5th Cir. 1998); see, e.g., United States v. Battles, 362 F.3d 1195, 1198 (9th Cir. 2004) (§ 2255

5   petition) (even though petitioner did not have access to trial transcripts, the facts supporting

6   claims which occurred at the time of his conviction could have been discovered if he "at least

7   consult[ed] his own memory of the trial proceedings;"   because he did not do so, he did not

8   exercise due diligence and was not entitled to a delayed start of the limitations period under §

9   2255(4)).   In fact, if Pina's failure to obtain the tapes and police reports were sufficient for §

10  2244(d)(1)(D) delayed start, the limitations period would not have started as of today -- 19 years

11  after the conviction -- because he still does not have that evidence.   Pina's alleged hunt for

12  evidence does not require the use of the § 2244(d)(1)(D) starting date because he knew of the

13  factual predicate for his claims in 1986.

14  The other possible delayed starting date for the limitations period is "the date on which the

15  impediment to filing an application created by State action in violation of the Constitution or laws

16  of the United States is removed, if the applicant was prevented from filing by such State action,"

17  28 U.S.C. § 2244(d)(1)(B). The few cases applying § 2244(d)(1)(B) have "dealt almost entirely

18  with the conduct of state prison officials who interfere with inmates' ability to prepare and to file

19  habeas petitions," and "comport with the plain meaning of the provision, which applies when a

20  petitioner has been impeded from filing a habeas petition." Shannon v. Newland, 410 F.3d 1083,

21  1087 (9th Cir. 2005) (rejecting claim that unfavorable state appellate opinion was an

22  "impediment" to petitioner's filing a habeas petition); see Whalem/Hunt v. Early, 233 F.3d 1146,

23  1148 (9th Cir. 2000) (en banc).   The alleged lack of evidence that might support the petition was

24  not an impediment created by unconstitutional or unlawful state action to Pina filing his habeas

25  petition – he could and did file habeas petitions without the evidence.   Moreover, the evidence in

26  question is physical evidence (e.g., tapes and police reports), the contents of which Pina has known

27  and been able to describe since 1986.   The delayed starting date under 28 U.S.C. § 2244(d)(1)(B)

28  does not apply because Pina was not prevented from filing an application created by State action

1    in violation of the laws or Constitution of the United States.

2

3          2.     <u>No Statutory Tolling Is Available For Pina</u>

4          Having determined that the one-year limitations period began on April 24, 1996, that the

5    presumptive deadline for filing the federal petition was April 24, 1997, and that Pina missed the

6    deadline by years, the next step is to determine whether the limitations period should be statutorily

7    tolled.  The one-year limitations period can be tolled under § 2244(d)(2) for the "time during

8    which a properly filed application for State post-conviction or other collateral review with respect

9    to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  Pina is not entitled to any

10   statutory tolling because the state habeas petitions that could toll the limitations period were not

11   filed until 1999.  Pina's state court filings in 1991, 1994 and 1995 do not toll the limitations

12   period.

13         An application for collateral review is "pending" in state court "as long as the ordinary state

14   collateral review process is 'in continuance' – <u>i.e.</u>, 'until the completion of' that process."  In other

15   words, until the application has achieved final resolution through the State's post-conviction

16   procedures, by definition it remains "pending."  <u>Carey v. Saffold</u>, 536 U.S. 214, 219-20 (2002).

17   In California, this means that the statute of limitations is tolled from the time the first state habeas

18   petition is filed until the California Supreme Court rejects the petitioner's final collateral

19   challenge, as long as the petitioner did not "unreasonably delay" in seeking review.  <u>Id.</u> at 221-23;

20   <u>see</u> <u>Nino v. Galaza</u>, 183 F.3d 1003, 1006 (9th Cir. 1999) (an application for collateral review is

21   "pending" in state court for "all of the time during which a state prisoner is attempting, through

22   proper use of state court procedures, to exhaust state court remedies with regard to a particular

23   post-conviction application.") (citation omitted), <u>cert. denied</u>, 529 U.S. 1104 (2000).  "When a

24   postconviction petition is untimely under state law, 'that [is] the end of the matter' for the purposes

25   of § 2244(d)(2)."  <u>Pace v. DiGuglielmo</u>, 125 S. Ct. 1807, 1812 (2005) (quoting <u>Carey v. Saffold</u>,

26   536 U.S. 214, 226 (2002)).  In <u>Pace</u>, the Supreme Court held that "time limits, no matter their

27   form, are 'filing' conditions.  Because the state court rejected petitioner's [postconviction]

28   petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under

§2244(d)(2)." Pace, 125 S. Ct. at 1814.

Pina's pre-1999 filings did not start the statutory tolling period.  His 1991 filing was a motion for transcripts in his state criminal case.  It did not challenge  the conviction or sentence but only sought to obtain documents – documents that were not the evidence he now claims he needed.  Pina's 1994 habeas petition filed in the Santa Clara County Superior Court was denied as untimely; it therefore was not "properly filed" for purposes of § 2244(d)(2) and is not entitled to statutory tolling.  See Pace, 125 S. Ct. at 1812.  Pina's 1995 habeas petition in the California Supreme Court was denied on the merits and for lack of diligence; it therefore was  not  properly filed under the reasoning of Pace and is not entitled to statutory tolling.  See id. at 1812, 1814 (holding that "time limits, no matter their form, are 'filing' conditions").   Under California's system, a petitioner sometimes is entitled to statutory tolling even during the gaps between his various state court collateral challenges; however, only a "properly filed" state collateral challenge can start the statutory tolling period that might last over the course of several rounds of state habeas filings.   Because the pre-AEDPA filings by Pina were not "properly filed" within the meaning of § 2244(d)(2), they did not start the statutory tolling period.   The earliest petition Pina filed that could have started the statutory tolling period – assuming arguendo that a petition filed after an earlier petition was denied as untimely could be considered properly filed – was not filed until 1999, but that was more than a year after the limitations period had ended on April 24, 1997.[2] The 1999 filing by Pina could not restart the limitations period that expired on April 24, 1997. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed," even if the state petition was timely filed), cert. denied, 540 U.S. 924 (2003).   In sum, the potential tolling event of the pendency of arguably properly filed state petitions did not start until 1999 -- a couple

---

[2]The recently revised opinion in Gaston v. Palmer, No. 01-56367, slip op. 8969 (9th Cir. Aug. 2, 2005), is factually distinguishable and does not alter the analysis.  In Gaston, the petitioner had filed six state collateral challenges.  The second through fifth of the challenges were denied without comment and the first and sixth challenges were dismissed for curable defects; therefore, all were "properly filed" under § 2244(d)(2).  See Gaston, slip op. at 8984-86.  Unlike Gaston's petitions, Pina's pre-1997 petitions were denied for the non-curable defect of being untimely and therefore were not properly filed.

United States District Court

For the Northern District of California

of years after the one-year period ended on April 24, 1997.  Unless Pina is able to bridge the gap between 1997 and 1999 by showing entitlement to equitable tolling for the period before the 1999 state habeas petition was filed, the state habeas petitions filed in and after 1999 were too late to matter.

### 3.    No Equitable Tolling Is Available For Pina

Equitable tolling of the limitation period is available upon a showing of extraordinary circumstances beyond a petitioner's control which prevented him from timely filing the petition. See, e.g., Calderon v. United States District Court (Beeler), 128 F.3d at 1288.  "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate."  Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).  Equitable tolling will not be available in most cases because extensions of time should be granted only if "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." Beeler, 128 F.3d at 1288 (citation and internal quotation marks omitted).  The prisoner must show that "the 'extraordinary circumstances' were the cause of his untimeliness." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (citations omitted).

There are several reasons equitable tolling is not warranted here.  First, the record before this court does not show a 15-year quest for evidence.  Although Pina asserts he has been trying for 15 years to obtain evidence to prepare a better petition, the evidence does not support his assertion.   Pina's 1991 and 1994 filings in state court sought production of the reporter's transcripts, clerk's transcripts and judgment roll from his criminal case and did not request a copy of the tapes or police reports.  In the record before this court, the first hint that Pina was trying to obtain police reports and perhaps other evidence is found in a March 25, 1999 letter Pina allegedly wrote to the public defender's office.  See Opposition, p. 42.  But even that document suggests a lack of diligence because it mentions that Pina had tried to obtain the evidence in 1991, eight years earlier, and had not received any answer.

Second, even assuming arguendo that Pina has been trying to get the evidence for the last 15 years, the record does not disclose diligence on his part.  There are long gaps between his

10

United States District Court

For the Northern District of California

efforts that are far more suggestive of a lack of diligence.    The record indicates that Pina occasionally would take a run at obtaining relief and then abandon his efforts for a few years and then take another run at it.[3]   After Pina's  motion was denied in 1991, he waited until 1994 to do his next court filing; after his 1995 petition was denied by the California Supreme Court, he waited until 1999 to do his next court filing; and after a series of petitions in 1999-2001 that ended with failure on the denial of the petition by the California Supreme Court on June 27, 2001, he waited a couple of more years until 2003 to begin another series of court filings.    "Under long-established principles, petitioner's lack of diligence precludes equity's operation." Pace, 125 S. Ct. at 1815; Miles v. Prunty, 187 F.3d at 1107 (external forces, rather than lack of diligence, must account for the untimely filing).

Third, even assuming arguendo that Pina has been trying to obtain the evidence for 15 years, he has known of the existence and contents of that evidence since 1986 during his trial.   The lack of the physical evidence itself simply cannot be realistically viewed as an "extraordinary circumstance."    To the contrary, it is a rare case where the inmate does have possession of the physical evidence that he alleges proves the merit of his claim.   For example, if a petitioner wanted to claim that an alleged murder weapon was incapable of firing, the failure to deliver to him that gun would not give him an open-ended excuse on the limitations period.   Pina's failure to obtain the physical evidence was not an extraordinary circumstance.

Fourth, assuming arguendo that Pina's inability to obtain the evidence was an extraordinary circumstance, it did not make it impossible for Pina to file his petition on time.   Pina has filed numerous petitions in state court and two in federal court, all without having possession of the evidence he claims is necessary to prove the truth of his claims.   As noted earlier, Pina still does not have the evidence, but he has been able to file habeas petitions here and in state court.

---

[3]The gaps between Pina's efforts to attack his criminal conviction are even less excusable because Pina was actively litigating on other fronts in 1994-2000.   He filed several civil rights actions in this court (Case Nos. C94-2124 SI, C94-2464 SI, C94-4161 SI, C95-2123 SI, C99-397 SI, and C99-1097 SI), and several of those cases continued for several years.   In Pina v. Gomez, Case No. C94-2464 SI, he was pursuing claims for himself and other inmates and complained about prison officials' interference with  his activity as a writ writer aiding other inmates.   Pina's choice to spend his time doing legal work for other inmates rather than attacking his own conviction does not show diligence with regard to the latter.

**United States District Court**
For the Northern District of California

1    Finally, the equitable tolling principle allows for tolling when an event or circumstance
2  makes the filing of a timely petition; it does not allow for tolling while a prisoner goes in search
3  of evidence to improve the quality of the petition that he can and does file.  Pina does not persuade
4  with his argument that the evidence was necessary for him to prepare a "better" petition.  If all a
5  prisoner had to do to obtain tolling was to say he was in search of physical evidence to make his
6  petition better or more persuasive -- notwithstanding his knowledge of the existence and contents
7  of that evidence --  the statute of limitations would be eviscerated as almost any petitioner could
8  make that argument to avoid the time limitation that Congress imposed.

9    Pina is not entitled to any equitable tolling of the limitations period.   His federal habeas
10  petition, filed on June 1, 2004, was untimely and therefore must be dismissed under 28 U.S.C. §
11  2244(d).

12

13                          **CONCLUSION**

14    Respondent's motion to dismiss is GRANTED.   (Docket # 8.)   The petition for writ of
15  habeas corpus is DISMISSED because it was not timely filed.  The clerk shall close the file.

16    IT IS SO ORDERED.

17  DATED: August _8__, 2005                        _____

18                                                 SUSAN ILLSTON
                                                   United States District Judge

19

20

21

22

23

24

25

26

27

28

                                        12